## BURKE, MIELE & GOLDEN, LLP

30 MATTHEWS STREET
SUITE 303A
POST OFFICE BOX 216
GOSHEN, N.Y. 10924
(845) 294-4080
FAX (845) 294-7673

PATRICK T. BURKE
ROBERT M. MIELE *
RICHARD B. GOLDEN
MICHAEL K. BURKE

DENNIS J. MAHONEY, III
KELLY M. NAUGHTON**
KARIN T. ANTIN

JOSEPH P. MCGLINN (1941-2000)
* ADMITTED IN NEW YORK & NEW JERSEY
** ADMITTED IN NEW YORK & MASSACHUSETTS

ROCKLAND COUNTY OFFICE:
100 WASHINGTON AVENUE
POST OFFICE BOX 397
SUFFERN, N.Y. 10901
(845) 357-7500
(845) 357-7321 (FAX)

REPLY TO: ☐ ORANGE CO.
          ☐ ROCKLAND CO.

Respond to Post Office Box

July 29, 2008

Honorable Kenneth M. Karas
United States District Court
300 Quarropas Street
United States District Court
White Plains, New York 10601

### SENTENCING MEMORANDUM

Re: United States v. George Cintron 08 CR 346-01 (KMK)

Dear Judge Karas:

I am writing on behalf of George Cintron who is to be sentenced on Wednesday August 6, 2008, upon his guilty plea to one count of Receiving and Possessing a Destructive Device. For the reasons set forth below, we urge the Court to sentence George to a non-guideline sentence of between twelve to eighteen months.

I attach the following exhibits for the Court's consideration in connection with sentencing:

Exhibit A – Character letter – mother, Hilda Lugo

Exhibit B – Character letter – older sister, Kisha Camacho – dated April 19, 2007

Exhibit C – Character letter – aunt, Jeanette Gilbert – dated April 22, 2007

Exhibit D – Character letter – HR Manager of Kmart in South Hills Mall, Tammy Schappert – dated April 22, 2007

# I

# BACKGROUND

George Cintron has pled guilty to receiving and possessing a destructive device in violation of 26 U.S.C. § 5861. Mr. Cintron's sentencing guideline range is 24 to 30 months. We would respectfully urge that a sentence within the guideline range would be unduly severe for a 21 year old who committed this act when he was 18 and who has a young daughter and who has no prior criminal convictions. For the reasons set forth below, we respectfully that a sentence between 12 to 18 months would be a reasonable but not greater than necessary sentence.

On February 28, 2008, Mr. Cintron was arrested for his involvement in the sale of a pipe bomb to a confidential informant on July 18, 2005, some two and a half years prior to his arrest. Contrary to paragraph nine and the statement in the justification of the pre-sentence report, Mr. Cintron did not build the pipe bomb himself. However he did sell the pipe bomb to the confidential informant which he what he admitted to in his plea allocution. Much has happened in Mr. Cintron's life over the two and half year period since his involvement in the above mentioned criminal activity. First, he and his long term girlfriend, Giselle Ojada, had a child Jasmin Cintron who is now two years old. After the birth of his daughter George found steady employment so that he could provide for her. Two years ago Mr. Cintron found a job at K-Mart and because of he is a reliable, hard working young man he has been promoted to a supervisory position. When Mr. Cintron was arrested on this case in February 2008, his primary concern was his

daughter's well being and how could he provide for her. Mr. Cintron relayed to me that he was expecting a tax refund and his last two paychecks from K-Mart and he wanted me to prepare a power of attorney for his mother so that his mother could cash these checks and provide some support for his daughter. Mr. Cintron realizes that his criminal actions have had a negative collateral impact on his daughter and his ability to provide for her. His realization that he had to be a more responsible individual is also reflected by the fact that he severed his affiliation with the Latin Kings after the birth of his daughter.

II

**APPLICATION OF THE 3553(a) MANDATE
AND FACTORS WARRANTS A NON-GUIDELINE
SENTENCE FOR GEORGE CINTRON**

The overriding principle of 3553(a) requires a district court to impose a sentence "sufficient, but not greater than necessary," to satisfy the four purposes of sentencing set forth in 3553(a)(2). The four purposes of sentencing set forth in 3553(a)(2) are: (A) to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant and (D) to provide the defendant with the needed educational or vocational training, medical care or other correctional treatment in the most effective manner.

The overriding principle of imposing a sentence that is sufficient *but not greater than necessary* to achieve these ends requires that the Court must also take into account 18 U.S.C. § 3582, especially when considering rehabilitation, the fourth purpose of sentencing under 3553(a)(2)(D). (emphasis supplied) 18 U.S.C. § 3582(a) states that the

court, in analyzing the 3553(a), factors must recognize that imprisonment is not an appropriate means of promoting correction and rehabilitation.

In determining whether the sentence is sufficient to comply with the 3553(a)(2) purposes of sentencing factors listed in § 3553(a). These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the kinds of sentences available;
>
> (3) the now advisory sentencing guidelines and policy statements;
>
> (4) the need to avoid unwarranted sentencing disparity; and
>
> (5) the need to provide restitution where applicable.

None of these factors are to be given greater emphasis than another. However, all of the factors are subservient to the overriding mandate to impose a sentence not greater than necessary.

### a. 3553(a)(1) Nature of the Offense and Characteristics of the Defendant.

When analyzing the characteristics of the defendant one must read 3553(a)(1) in conjunction with 18 U.S.C. § 3661 which provides that "no limitation shall be placed on the information concerning the background character and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Thus, the court can consider a variety of factors regarding the defendant's background and character such as: his age, his mental and emotional maturity level, and educational or vocational skills. In considering those factors to the case, Mr. Cintron was 18 years old high school drop out at the time of the offense. If Mr.

Cintron was arrested by the state authorities for this offense because of his young age he would have been eligible for youthful offender treatment. If he was adjudicated as a youthful offender by the sentencing judge he would be subject to a less sever sentence and would not have a criminal conviction on his record.

### b. The kinds of sentences available (3553(a)(3)) and the need to avoid unwarranted sentencing disparity (3553(a)(6))

Since the guidelines are non-mandatory, the sentencing table restrictions on probation are also advisory. The need to avoid unwarranted sentencing disparities is also a factor that can be considered where there is "disparate treatment between federal and state court sentences in similar cases." *United States v. Wilkerson*, 411 F.3d 1, 10 (1st Cir. 2005) Such is the case here. The Second Circuit has not foreclosed for defendants the issue of state disparity in sentencing. *See United States v. McDaniel*, 175 Fed.Appx. 456, 459 (2d Cir. 2006) (noting that the defendant's sentence was reasonable "[e]ven assuming that McDaniel is correct and the District Court could have considered" the disparity between his federal sentence and the sentence he would have received under state law).

### c. The offense level overstates the need to protect the public from further crime and the need for deterrence

Mr. Cintron falls into Criminal History Category I because he has *no* prior criminal history points. He has no points because he has no prior convictions. This is an area in which the Sentencing Commission has done a bit of homework. In its 15-year report, if found that defendants who fall into Category I due to *no* prior criminal history points are the *least* likely to re-offend. *See* United States Sentencing Commission,

5

Recidivism and the First Offender at 13-14 (May, 2004)(reflecting recidivism rate of 11.7 percent for offenders with 0 criminal history points, as opposed to a 22.6 percent rate for those with one criminal history point), available online at http://www.ussc.gov/publicat/Recidivism_FirstOffender.pdf. The demographic information, including a steady work history and other socially beneficial traits, tend to describe those who have no criminal history points. *See id.* at 6-8. Therefore, it appears that a lengthy sentence to protect the public is not a factor that weighs against Mr. Cintron. Rather, it is one which indicates that a lengthy sentence is not necessary in this case.

**d.    The Court possesses the authority to carefully review the recommended sentence in light of the individual circumstances presented by the means wherein Mr. Cintron came to commit this crime, as well as his personal characteristics**

As recently confirmed by the United States Supreme Court, a sentencing judge "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 128 S.Ct. at 596. However, the Guidelines are not the only consideration which must be made in sentencing. Rather, a judge must independently evaluate the appropriate sentence in light of the purposes set forth in 18 U.S.C. § 3553(a) and must consider arguments that the Guidelines should not apply on general policy grounds, case-specific grounds, or "regardless." *See Rita v. United States*, 127 S.Ct. 2456, 2463, 2465, 2467-68 (2007). In doing so, the sentencing court "may not presume that the Guidelines range is reasonable." *Gall*, 128 S.Ct. at 596-97. *See also Rita*, 127 S.Ct. at 2465 (same). Rather, the judge must make sentencing determinations in

light of the over-arching statutory provision indicating that the sentence imposed is "'sufficient, but not greater than necessary,' to achieve the goals of sentencing." *Kimbrough v. United States*, 128 S.Ct. 558, 570 (2007). Because the Guidelines are only advisory, the sentencing court may not mechanically assume that the guidelines frame the boundaries of a reasonable sentence in every case. *United States v. Martin*, No. 06- 1983, slip op. at 8 (1st Cir. Mar. 21, 2008).

In commenting on the manner in which district courts should interpret the recent sentencing changes, starting with *United States v. Booker*, 543 U.S. 220 (2005) and most recently including the decision in *Gall, supra,* the First Circuit reaffirmed that sentencing "necessitates a case-by-case approach, the hallmark of which is flexibility." *Martin*, slip op. at 9. In imposing a just sentence, courts are required to "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Id., quoting Gall,* 128 S.Ct. at 598. As such, "sentencing becomes a judgment call, and a variant sentence may be constructed 'based on a complex of factors whose interplay and precise weight cannot even be precisely described.'" *Martin*, slip op. at 10, *quoting United States v. Vega-Santiago*, No. 06-1558, slip op. at 7 (1st Cir. Feb. 21, 2008)(en banc).

Sentencing courts have a duty toward the individual who stands before them, first and foremost, but they also have a duty to examine the Guidelines in an effort to make the Guidelines better. In *Rita*, Justice Breyer described the intended evolution of the Guidelines, saying that the Commission's work is "ongoing" in that it is required to collect statements of reasons when district courts impose non-guideline sentences. It does

so that it "can revise the Guidelines accordingly." *Id.* at 2464. This evolutionary ideal can only be realized when district courts disagree with the Guidelines when warranted by policy considerations and communicate those disagreements to the Commission through their sentencing decisions. The Supreme Court followed up on this theme in *Gall*, indicating the need for a thorough explanation of reasons for a non-guideline sentence in light of the fact that, although many of the Guidelines are the product of "extensive empirical evidence," the Court recognized that "not all of the Guidelines are tied to this empirical evidence." *Gall*, 128 S.Ct. at 594 and n.2.

## **CONCLUSION**

Mr. Cintron did possess and sell a pipe bomb to a confidential informant. This action could have had dangerous or even deadly consequences. Thankfully, it did not. Mr. Cintron did not build this pipe or arrange for its sale. He did however, store the pipe bomb at his house and sold it to the confidential informant. His actions demand that he be punished.

It is respectfully requested that for these reasons set forth above we urge the Court to grant a variance in this case and impose a non-guideline sentence of anywhere between 12 to 18 months.

Dated: July 29, 2008

                                          Respectfully submitted,

                                          _____
                                          Michael K. Burke, Esq. (7554)
                                          Burke, Miele & Golden, LLP
                                          30 Matthews Street, Suite 303A
                                          Post Office Box 216
                                          Goshen, New York 10924
                                          (845) 294-4080

To:    Anna Skotko, Esq.
        Assistant United States Attorney
        United States Courthouse
        Southern District of New York
        300 Quarropas Street
        White Plains, New York 10601

Dear Sir,

      My name is Hilda Lugo I'm the mother of George Cintron. I would like to say that I understand that my son will receive punishment for the crime he has committed.

George is a devoted father to his daughter, before his arrest he worked very hard to make a better life for his child. His plan was to enter the Army. Now of course that cannot be, due to his crime.

I wanted to give you some background about my son. At the age of two George Cintron suffered a head injury from an accident at Rye Playland. Also at the age of two he lost his father.

George was only four years old when he was hospitalized in a mental hospital to help him cope with his father's death. To this day my son has trouble understanding why his father was taken. George has been disabled since he was a child.

I hope and pray that the only thing George can make the changes needed to better himself, while serving his time. Hopefully he will earn his G.E.D. and learn some working skills.

                Sincerely,

                Hilda Lugo



# GENERATIONS+
## NORTHERN MANHATTAN
### HEALTH NETWORK

**LINCOLN MEDICAL AND MENTAL HEALTH CENTER**
234 Eugenio Maria De Hostos Blvd. (149th Street), Bronx, NY 10451  Tel 718-579-5700  Fax 718-579-5319

HARLEM
HOSPITAL CENTER

LINCOLN MEDICAL AND
MENTAL HEALTH CENTER

METROPOLITAN
HOSPITAL CENTER

MORRISANIA DIAGNOSTIC
AND TREATMENT CENTER

RENAISSANCE
HEALTH CARE NETWORK

SEGUNDO RUIZ BELVIS
DIAGNOSTIC & TREATMENT CENTER

Kisha Camacho
1781 Bruckner Blvd

April 19, 2008

The Honorable Judge:

This letter by I, Kisha Camacho, on behalf of George Cintron. I have personally known George his whole life, I'm his older sister. George dad was taking when he was only a child. That leaving my mom to raise a son without a father. I know that my brother made a big mistake. And I also know that if he had the chance to undo that mistake he will.

The day George found out his fiancé was having his baby he was so happy. From that day on he has changed his life. He has worked several jobs to establish himself, and his family. George has endeavored to be a major provider for his fiancé and daughter.

Due to his present situation, my mom and I have been supporting his daughter. Jasmine is only two years old and misses her daddy dearly.

Now being that George did in fact break the law, Due to what I feel was bad influence, and I feel that prison time will not help George in the least bit way. I don't just state this due to the fact that he is my brother but I truly believe this to be true. Taking away George's freedom now, at this point of his life, being that he is now in the right track will literally destroy him. It is to my understanding that prison terms are laid down to those that either lead a criminal life style and or those that show that rehabilitation is needed. Placing George in such an environment with negative influences in this atmosphere will just teach him how to become a criminal. That is why I feel that it would be in George's best interest to stay out of jail. It is the interest of the accused to serve a punishment that will not affect not only his life, but also his little girl's life.

I ask that you do not change the direction of George's life based on a mistake.

Sincerely,
Kisha Camacho

*K. Camacho*

April 22, 2008

To Whom It May Concern:

I am writing this letter on behalf of my nephew George Cintron who is now 21 years old. At the age of seven, I witness his learning disability. Ever since his father passed away, he was emotionally and physically distraught. When he was a child, I remember visiting him in a mental facility in the Bronx. This was very difficult and emotional time for me and my sister. When he was a child he was also involved in an accident at Rye Play; NY which I know this affected him medically and physically.

As he grew older, I observed that he tried to overcome his disability. He had become a responsible individual, an excellent father, very loving and caring to his daughter; also very supportive, financially and physically. George was a full time employee, learning to adapt to a normal life. He is a wonderful human being, which I love and care for deeply.

My only hope for him is that continues in this path.

If you have any questions, please do not hesitate to contact me at 646-725-1166.

Sincerely,

Jeanette Gilbert

April 22, 2008

To Whom It May Concern:

George has been an employee of Kmart in the South Hills Malls for a while and has always been in good standings with the company.

George is a very good worker who rarely calls in sick or comes in late. We truly rely on George when he was here.

If you have any further questions feel free to call me at any time at (845) 297-1246.

Sincerely,

Tammy Schappert
HR Manager

**3372 Big Kmart**
1895 SOUTH RD.
POUGHKEEPSIE, NY 12601